The Honorable Brian D. Lynch
Chapter 7

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re<br><br>VENTURE FINANCIAL GROUP, INC.,<br><br>Debtor. | Case No. 13-46392-BDL |
| MARK D. WALDRON, chapter 7 trustee for Venture Financial Group, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of Venture Bank,<br><br>Defendant. | Adversary Proceeding No. 14-04194-BDL<br><br>DEFENDANT'S NOTICE OF APPEAL |

**Part 1. Identify the appellant(s)**

    1.    Name(s) of appellant(s): Federal Deposit Insurance Corporation, as Receiver for Venture Bank.

DEFENDANT'S NOTICE OF APPEAL - 1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

70062141.1
727986.0003
Case 14-04194-BDL    Doc 82    Filed 11/19/15    Ent. 11/19/15 16:36:38    Pg. 1 of 11

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | ☐ Debtor |
| ☒ Defendant | ☐ Creditor |
| ☐ Other (described): _____ | ☐ Trustee |
| | ☐ Other (describe) _____ |

**Part 2. Identify the subject of this appeal.**

1. Describe the judgment, order, or decree appealed from: Order on Motions for Summary Judgment (ECF #80).

2. State the date on which the judgment, order, or decree was entered: November 5, 2015.

A copy of the order appealed from is attached hereto.

**Part 3. Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Federal Deposit Insurance Corporation, as Receiver for Venture Bank

   Attorney: Teresa H. Pearson, WSB No. 25889
   Miller Nash Graham & Dunn LLP
   111 S.W. Fifth Avenue, Suite 3400
   Portland, Oregon 97204-3699
   (503) 224-5858

   B. Amon James
   Federal Deposit Insurance Corporation
   3501 Fairfax Drive, Room D-7060
   Arlington, Virginia 22226-3500
   (703) 562-2631

   Nicholas Katsonis
   Federal Deposit Insurance Corporation
   3501 Fairfax Drive, Room D-7060
   Arlington, Virginia 22226-3500
   (703) 562-2089

DEFENDANT'S NOTICE OF APPEAL - 2

70062141.1
727986.0003

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 14-04194-BDL    Doc 82    Filed 11/19/15    Ent. 11/19/15 16:36:38    Pg. 2 of 11

| | 2. Party | Mark D. Waldron, chapter 7 trustee for Venture Financial Group, Inc. | Attorney: | Dillon E. Jackson, WSB No. 1539 Foster Pepper PLLC 1111 Third Avenue, Suite 3400 Seattle, Washington 98101-3299 (206) 447-4400 |
|---|---|---|---|---|

**Part 4. Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 168(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5. Sign below**

*/s/ Teresa H. Pearson*     Date: November 19, 2015
Signature of attorney for appellant(s)(or appellant(s) if not represented by an attorney

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):

Teresa H. Pearson, WSB #25889
Miller Nash Graham & Dunn LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204-3699
(503) 224-5858

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

DEFENDANT'S NOTICE OF APPEAL - 3

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

70062141.1
727986.0003
Case 14-04194-BDL    Doc 82    Filed 11/19/15    Ent. 11/19/15 16:36:38    Pg. 3 of 11

Entered on Docket November 5, 2015

**Below is the Order of the Court.**



_____
**Brian D. Lynch**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>VENTURE FINANCIAL GROUP, INC.,<br><br>                    Debtor. | Case No. 13-46392-BDL |
| MARK D. WALDRON,<br><br>                    Plaintiff,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>                  Defendant. | Adversary No. 14-04194-BDL<br><br>**ORDER ON MOTIONS<br>FOR SUMMARY JUDGMENT** |

The chapter 7 trustee ("Trustee") for the bankruptcy estate of Venture Financial Group, Inc. ("VFG") filed a complaint against the Federal Deposit Insurance Corporation in its capacity as receiver of Venture Bank ("FDIC-R") asserting four claims, each stemming from the estate's alleged ownership of certain tax refunds. FDIC-R contends that the tax refunds at issue were owned by Venture Bank, a wholly-owned subsidiary of VFG. The parties each filed motions for summary judgment [ECF no. 51, 61], as well as responses [ECF no. 68, 70] and

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 1

Case 14-04194-BDL    Doc 82    Filed 11/05/15    Ent. 11/05/15 16:05:34    Pg. 1 of 18

replies [ECF no. 74, 77]. A hearing on the parties' motions for summary judgment was held on October 8, 2015. Trustee appeared through his counsel, Dillon Jackson, and FDIC-R appeared through its counsel, Teresa Pearson. At the hearing, Trustee abandoned his claim seeking declaratory judgment, leaving three unresolved claims concerning ownership of the tax refunds. After hearing oral arguments from both parties, the Court took the matter under advisement.

### A. Evidentiary Issues

Along with the parties' motions for summary judgment, responses, and replies, the Court considered supporting declarations submitted by FDIC-R from Justin Martin [ECF no. 52] and by Trustee from Dillon Jackson, Kenneth Parsons, James Arneson, and Sandra Sager [ECF no. 62-65, 71], as well as various exhibits and deposition excerpts submitted by FDIC-R [ECF no. 53-55]. FDIC-R filed a series of objections to Trustee's supporting declarations [ECF no. 69, 75], and Trustee responded [ECF no. 78]. In an oral ruling at the October 8, 2015 hearing, the Court sustained FDIC-R's objections to certain portions of those declarations but otherwise overruled FDIC-R's objections and considered the declarations as part of the record.

### B. Summary Judgment

Federal Rule of Civil Procedure 56(a), made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 2

Case 14-04194-BDL    Doc 82    Filed 11/05/15    Ent. 11/05/15 16:35:34    Pg. 5 of 11

be drawn in the nonmovant's favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

### 1. The Tax Refunds

Venture Bank and Venture Wealth Management, Inc. are both wholly-owned subsidiaries of VFG (collectively, the "Consolidated Group"). In the past, VFG, as the parent corporation, served as sole agent for the Consolidated Group for tax purposes, pursuant to 26 C.F.R. § 1.1502-77. In 2009, Venture Bank was closed and placed into federal receivership, with FDIC-R appointed as receiver. In 2011, FDIC-R made a request to the Internal Revenue Service (the "IRS") to serve as alternative agent to file tax returns for the Consolidated Group, pursuant to 26 C.F.R. § 301.6402-7, which was approved despite VFG's objection. Between 2011 and 2013, FDIC-R filed amended tax returns as alternative agent for the Consolidated Group, requesting refunds for years 2004 through 2007. VFG filed its voluntary chapter 7 petition on October 10, 2013.

This dispute concerns ownership rights to tax refunds received by FDIC-R, as alternative agent for the Consolidated Group, in the amounts of $6,204,763.10 pre-petition and $2,267,219.26 post-petition (the "Tax Refunds"). As ordered by the Court, the Tax Refunds are currently held in a neutral account pending resolution of this ownership dispute [Case no. 13-46392, ECF no. 98]. The parties agree that the Tax Refunds are solely attributable to loss carrybacks of Venture Bank.

### 2. *Bob Richards*

"In the context of tax refunds attributable to a subsidiary (but held by a parent as a result of a decision to file consolidated tax returns)… 'the parties are free to adjust among themselves the ultimate tax liability.'" *In re Indymac Bancorp, Inc.*, 554 F. App'x 668, 669 (9th

Cir. 2014) (quoting *W. Dealer Mgmt. v. England* (*In re Bob Richards Chrysler–Plymouth Corp.*), 473 F.2d 262, 264 (9th Cir. 1973) ("*Bob Richards*")). Under *Bob Richards*, "where the parties have made no agreement concerning the ultimate disposition of the tax refund, the parent holds the tax refunds in trust for the subsidiary." *Id.* (internal quotations omitted). Therefore, the threshold issue for determining ownership of the Tax Refunds is whether there is an agreement concerning the ultimate disposition of the Tax Refunds, which "may be done through an explicit agreement, or an agreement implied by the parties' past practices." *Id.* (citing *Bob Richards*, 473 F.2d at 264 & n. 4) (internal quotations omitted).

The parties' positions on the threshold issue continue to evolve, but suffice to say there are disputes regarding whether the tax allocation agreement of VFG's predecessor-in-interest is still in effect, whether that agreement was abandoned, whether that agreement was supplanted by a more recent written agreement which cannot be located, whether there was an agreement which may be implied by the parties past practices, and what the terms of the alleged written or implied agreement are. There are genuine issues of material facts which prevent the Court from resolving this issue on summary judgment.

### 3. **The Policy Statement and Treasury Regulations**

FDIC-R relies on the 1998 Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure (the "Policy Statement") and related Treasury regulations in two ways: first, by asserting that the Policy Statement and Treasury regulations support the conclusion that the Tax Refunds are not property of VFG's bankruptcy estate, and second, by alleging that the parties and their predecessors-in-interest followed procedures mirroring the Policy Statement and Treasury regulations.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 4

Case 14-04194-BDL    Doc 820    Filed 11/05/15    Ent. 11/05/15 16:35:34    Pg. 7 of 11

The Policy Statement was issued "to provide guidance to banking organizations and savings associations regarding the allocation and payment of taxes among a holding company and its subsidiaries." Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed.Reg. 64757-01 (Nov. 23, 1998).[1] The Policy Statement encourages written tax allocation agreements, and provides suggestions for how those agreements should address certain issues.

One of those suggestions is that "an organization's tax allocation agreement or other corporate policies should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent." *Id.* That suggestion is based on the Policy Statement's guidance that, pursuant to 26 C.F.R. § 1.1502-77(a), "a parent company that receives a tax refund from a taxing authority obtains these funds as agent for the consolidated group on behalf of the group members." *Id.*

26 C.F.R. § 1.1502-77 is a Treasury regulation generally establishing that the parent company serves as the sole "agent" for "all matters relating to the federal income tax liability for the consolidated return year for each member of the group." 26 C.F.R. § 1.1502-77(a)(1). Similarly, 26 C.F.R. § 301.6402-7 is a Treasury regulation outlining procedures for issuing tax refunds when the consolidated group includes an insolvent financial institution, and allowing a fiduciary to be deemed an "agent" under 26 C.F.R. § 1.1502-77 when certain notice requirements are satisfied. 26 C.F.R. § 301.6402-7(c).

The Policy Statement is "non-binding" and legally "irrelevant" to adjudicating the ownership of the Tax Refunds. *In re IndyMac Bancorp, Inc.*, No. 2:08-BK-21752-BB, 2012 WL

---

[1] The agencies consist of The Federal Deposit Insurance Corporation, the Board of Governors of the Federal Reserve System, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision. Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed.Reg. 64757-01.

1037481, at *39 (Bankr. C.D. Cal. Mar. 29, 2012) *report and recommendation adopted sub nom. In re IndyMac Bancorp Inc.*, No. CV 12-02967-RGK, 2012 WL 1951474 (C.D. Cal. May 30, 2012) *aff'd sub nom. In re Indymac Bancorp, Inc.*, 554 F. App'x 668 (9th Cir. 2014); *see also In re Vineyard Nat. Bancorp*, 508 B.R. 437, 446 (Bankr. C.D. Cal. 2014) ("nothing in the [Policy Statement] renders it legally binding or has the force of law"). Therefore, the Court will only consider the Policy Statement to whatever extent it can be shown that it was expressly or impliedly incorporated into a tax allocation agreement. *See, e.g., In re NetBank, Inc.*, 729 F.3d 1344, 1350 (11th Cir. 2013) (agreement included a "clear expression" that "the intent of the parties was to comply with the Policy Statement.") *cert. denied sub nom. Zucker v. F.D.I.C.*, 135 S. Ct. 476, 190 L. Ed. 2d 357 (2014).

Like the Policy Statement, the Treasury regulations "are basically procedural in purpose and were adopted solely for the convenience and protection of the federal government," and none of those regulations can be construed to govern the issue of ownership. *Bob Richards*, 473 F.2d at 265; *see also In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 at *6 ("Tax regulations concerning the payment of refunds to a holding company (or any other entity) are not determinative of the ultimate ownership of such refunds."); *In re Team Financial, Inc.*, No. 09-10925, 2010 WL 1730681, at *7 (Bankr. D. Kan. Apr. 27, 2010) (neither 26 C.F.R. § 1.1502-77 nor 26 C.F.R. § 301.6402-7 determine the ownership of any overpayment or refund.). Moreover, 26 C.F.R. § 301.5402-7 explicitly states that it "determines the party to whom a refund or tentative carryback adjustment will be paid but is not determinative of ownership of any such amount among current or former members of a consolidated group (including the institution)." 26 C.F.R. § 301.5402-7(j). Therefore, the Court

will not give any legal significance to Treasury regulations in determining ownership of the Tax Refunds.

Having determined that the Policy Statement and related Treasury regulations are legally insignificant for determining ownership of the Tax Refunds, the Court also declines to attribute any legal significance to FDIC-R's filing of income tax returns or receiving the Tax Refunds from the IRS as alternative "agent" for the Consolidated Group. "Case law makes clear that this "agent" status is procedural only and without effect on the parties." *In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 at n. 13 (citing *Bob Richards*, 473 F.2d at 265). "Tax regulations concerning the payment of refunds to a holding company (or any other entity) are not determinative of the ultimate ownership of such refunds." *Id*. at *6. *See also In re Vineyard Nat. Bancorp*, 508 B.R. at 446 (it is "irrelevant" which party "received the tax refunds directly from the IRS.").

### 4. 28 U.S.C. § 1823(e)

FDIC-R also argued that any alleged tax allocation agreement would be unenforceable pursuant to 12 U.S.C. § 1823(e), which imposes certain conditions on the enforcement of an "agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance Corporation] in any asset acquired by it" as receiver. 12 U.S.C. § 1823(e)(1).

12 U.S.C. § 1823(e) only applies to "conventional loan" transactions. *In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 at *41. Tax allocation agreements are not the sort of "regular banking transaction" to which 12 U.S.C. § 1823(e) is intended to apply. *Id*. Therefore, 12 U.S.C. § 1823(e) is "legally and factually inapplicable" to the Court's determination of ownership of the Tax Refunds. *Id*.

### C. Conclusion

The Court grants partial summary judgment to Trustee as to certain claims made by FDIC-R, as spelled out in this ruling, but denies both parties' motions for summary judgment as to the central question of whether there is an agreement that determines the ownership of the Tax Refunds, and if so, what the terms of that agreement are. Summary judgment is also granted to FDIC-R on Trustee's declaratory judgment claim which Trustee has abandoned. Pursuant to the scheduling order, the Court will issue a separate order setting a pre-trial conference to discuss trial setting and related issues.

/// END OF ORDER ///