UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re<br><br>VENTURE FINANCIAL GROUP, INC.,<br><br>Debtor. | Case No. 13-46392-BDL |
| MARK D. WALDRON, chapter 7 trustee for Venture Financial Group, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of Venture Bank,<br><br>Defendant. | Adversary Proceeding No. 14-04194-BDL<br><br>MOTION FOR LEAVE TO APPEAL |

Pursuant to 28 U.S.C. § 158(a)(3), defendant the Federal Deposit Insurance Corporation, as Receiver for Venture Bank (the "FDIC-Receiver"), hereby moves for leave to appeal the Bankruptcy Court's Order on Motions for Summary Judgment (ECF 80, filed November 5, 2015).

This case involves whether the FDIC-Receiver, as receiver for Venture Bank (the "Bank"), or the bankruptcy trustee (the "Trustee") for the bank's holding company Venture Financial Group, Inc. (the "Holding Company") is entitled to $8,471,982.36 in federal income

MOTION FOR LEAVE TO APPEAL - 1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4

tax refunds (the "Tax Refunds").  The Bankruptcy Court applied an incorrect legal framework to the analysis of the issues on the merits.  As a result, the Bankruptcy Court improperly denied the FDIC-Receiver's motion for summary judgment.  Because the Bankruptcy Court failed to apply binding Ninth Circuit law and neglected the undisputed facts supporting the FDIC-Receiver's motion for summary judgment, leave for appeal should be granted.

**A.     Facts Necessary to Understand the Question Presented**

Venture Bank was closed by the Washington Department of Financial Institutions on September 11, 2009, and the FDIC was appointed as its Receiver.  Approximately four years later, on October 10, 2013, the Holding Company filed its chapter 7 bankruptcy petition.

As the duly authorized alternative agent for the consolidated group including the Bank and the Holding Company, the FDIC-Receiver filed all of the tax returns requesting the Tax Refunds.  The IRS paid $6,204,763.10 of the Tax Refunds to the FDIC-Receiver before the bankruptcy was filed and paid the remaining $2,267,219.26 to the FDIC-Receiver after the bankruptcy was filed.  All parties agree that the tax refunds are solely attributable to loss-carrybacks claims filed by the FDIC-Receiver on behalf of the failed Venture Bank.

The Trustee brought an adversary proceeding asserting four claims against the FDIC-Receiver:  (1) avoidance of a preferential transfer under 11 U.S.C. § 547, seeking to recover the $6,204,763.10 portion of the Tax Refunds received by the FDIC-Receiver before the bankruptcy, (2) objection to the FDIC-Receiver's proof of claim under 11 U.S.C. § 502,[1] asserting that the bankruptcy estate owned the Tax Refunds and that the FDIC-Receiver was, at most, entitled to an unsecured claim, (3) declaratory judgment under 11 U.S.C. § 105 and 28 U.S.C. §§ 2201 and 2202 concerning ownership of the Tax Refunds, and (4) turnover of all Tax

---

[1] The FDIC-Receiver did not seek payment of money in its proof of claim.  Instead, the proof of claim asserts the FDIC-Receiver's rights to the Tax Refunds, and was filed to avoid any contention that the FDIC-Receiver waived any of its rights.

MOTION FOR LEAVE TO APPEAL - 2

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4

Case 14-04194-BDL    Doc 83    Filed 11/19/15    Ent. 11/19/15 16:37:44    Pg. 2 of 17

Refunds, whether pending or received, under 11 U.S.C. § 542. The Trustee later abandoned the claim for declaratory judgment, leaving the remaining three claims at issue.[2]

After conducting extensive factual discovery, the FDIC-Receiver and the Trustee filed cross-motions for summary judgment.

Based on the summary judgment proceedings, the Trustee has admitted that (1) after exhausting the options for factual discovery, he has been unable to locate any currently-operative written tax allocation agreement, and (2) his right to the Tax Refunds is based solely on a finding that 11 U.S.C. § 541(a) creates new property interests that the Holding Company did not otherwise have outside of bankruptcy.

First, the Trustee's complaint was based entirely on a February 12, 1993, Tax Allocation Agreement between First Community Financial Group, Inc., and First Community Bank.[3] But the Trustee abandoned this claim by conceding that the "[t]estimony of officers of the Parent and the Bank indicate[s] that this 1993 Agreement was replaced in later years." Trustee's Motion, p. 4, lns. 5-6. The Trustee was unable to adduce evidence of any other written tax allocation agreement between the Bank and Holding Company.

Second, the Trustee has acknowledged that the Holding Company could not claim an ownership interest in the Tax Refunds, but instead claims the Trustee has a greater right to the Tax Refunds based on 11 U.S.C. § 541(a). At the hearing on the cross-motions for summary judgment, counsel for the Trustee stated: "I mean, the record is clear. This is not a claim by the parent or the officers of the parent, 'We own the money,' because they didn't have basis to say

---

[2] The FDIC-Receiver brought a motion to dismiss, asserting that the Bankruptcy Court did not have jurisdiction to decide the claims in the adversary proceeding. The FDIC-Receiver asserted, among other things, that (1) no court could have jurisdiction over the Trustee's preference claim because the Trustee had not complied with the mandatory administrative claims process under Title 12 and (2) pursuant to 12 U.S.C. § 1821(d)(6)(A) jurisdiction over the claims against the FDIC-Receiver (particularly a claim for affirmative monetary relief, as requested by the Trustee) rested exclusively in the district court within which the depository institution's principal place of business was located and the United States District Court for the District of Columbia. The Bankruptcy Court denied that motion.

[3] First Community Bank later changed its name to Venture Bank.

MOTION FOR LEAVE TO APPEAL - 3

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4

Case 14-04194-BDL  Doc 83  Filed 11/19/15  Ent. 11/19/15 16:37:44  Pg. 3 of 17

1 that." Transcript, 10/8/2015, pp. 22-23. Instead, the Trustee asserts that "[i]t's an issue of

2 bankruptcy law. It's an issue of property of the estate and the direction of [11 U.S.C. §] 541 …."

3 Transcript, 10/8/2015, p. 31.

4         The Trustee's admissions regarding ownership of the Tax Refunds also

5 undermine the Trustee's claim that the IRS's payment of Tax Refunds constituted a preferential

6 transfer. 11 U.S.C. § 547(b) (transfers must be "of an interest of the debtor in property").

7 Moreover, under 11 U.S.C. § 547(b)(2) transfers must be "for or on account of an antecedent

8 debt." The testimony of the witnesses was clear, unambiguous, and undisputed: the Holding

9 Company did not owe the Bank any money on the petition date or anytime in the 90 days before

10 the bankruptcy was filed. Kenneth Parsons, who was on the board of directors of both the Bank

11 and the Holding Company, testified:

> Q: At the time that the holding company filed bankruptcy, did it owe the bank any money?
>
> A: Not to my knowledge.
>
> Q: Did the holding company owe the bank money at any time within the 90 days before the bankruptcy was filed?
>
> A: Not to my knowledge.[4]

17 Sandra Sager, who was the Chief Financial Officer for both the Bank and the

18 Holding Company, testified:

> Q: So the holding company did not have to pay any tax money to the bank? Is that what you are saying?
>
> A: Right.
>
> Q: Okay. So there – there was no debt obligation –
>
> A: No.
>
> Q: -- where the holding company had to pay the bank tax money?

---

[4] Parsons, p. 73, lns. 18-24.

MOTION FOR LEAVE TO APPEAL - 4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4

Case 14-04194-BDL     Doc 83     Filed 11/19/15     Ent. 11/19/15 16:37:44     Pg. 4 of 17

A:  No, the holding company did not have to pay the bank
                        anything.[5]

        The Bankruptcy Court entered the Order on Motions for Summary Judgment
without addressing these uncontested facts.[6]

        **B.      The Question Presented**

        The FDIC-Receiver requests leave to address at least the following legal issues on appeal:

        1.      Where the Trustee failed to adduce evidence of a binding applicable tax sharing agreement, concedes that the Holding Company had no basis to claim an ownership interest in the Tax Refunds, and claims, instead, that 11 U.S.C. § 541(a) gives the Trustee greater property rights than the Holding Company had before bankruptcy, did the Bankruptcy Court err when it refused to grant summary judgment for the FDIC-Receiver on ownership of the Tax Refunds and the related turnover and preference claims?

        2.      Where payment on an antecedent debt is a required element of a preference claim, and there was no evidence in the record that the Holding Company owed the Bank an antecedent debt in the 90 days before bankruptcy, did the Bankruptcy Court err when it refused to grant summary judgment on the preference claim to the FDIC-Receiver?

        **C.      The Relief Sought**

        The Bankruptcy Court committed plain, legal error by failing to apply binding law to the undisputed facts.  The District Court should allow the interlocutory appeal, overturn

---

[5] Sager, p. 166, lns. 6-15.

[6] Because of the jurisdictional issues raised in the motion to dismiss, the FDIC-Receiver asked the Bankruptcy Court to issue submit proposed findings of fact and conclusions of law to this Court on the cross-motions for summary judgment, but the Bankruptcy Court did not do so.

MOTION FOR LEAVE TO APPEAL - 5

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

70062854.4
Case 14-04194-BDL    Doc 83    Filed 11/19/15    Ent. 11/19/15 16:37:44    Pg. 5 of 17

the Order on Motions for Summary Judgment, and grant summary judgment in favor of the FDIC-Receiver.

Binding case law sets forth the legal rule for determining who owns tax refunds when taxes are filed by a consolidated tax filing group. The Ninth Circuit Court of Appeals has established that tax refunds resulting from offsetting the losses of one member of the consolidated filing group against that same member's prior year income belong to that member. *Western Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler–Plymouth Corp.)*, 473 F.2d 262, 265 (9th Cir. 1973). Any other member of the consolidated tax filing group receiving those tax refunds holds those funds only as an agent in trust. *Id.* As an exception to the general rule, members of a consolidated group may enter into a contract providing expressly for different treatment of tax refunds. But, unless and until the consolidated group enters into an agreement specifically allowing the parent to keep the subsidiary's tax refunds, the general rule governs. *Id.*

As noted above, the Trustee could not and did not adduce evidence of any applicable tax sharing agreement, much less one specifically allowing the Holding Company to keep the Tax Refunds. As the Trustee conceded in the Trustee's Motion for Summary Judgment, "[t]estimony of officers of the Parent and the Bank indicate that this 1993 Agreement was replaced in later years." Trustee's Motion, p. 4, lns. 5-6. Thus, the Trustee has no right to the Tax Refunds under *Bob Richards*, and consequently his claims of turnover and preference that required ownership of the Tax Refunds, cannot stand.[7]

To prevail on his preference claim, the Trustee was required to prove that there was a transfer of an interest of the Debtor in property (1) to or for the benefit of a creditor, (2) on

---

[7] Even if the only agreement adduced by the Trustee, the outdated First Community TAA, was still in effect, it would not apply to the circumstances of this case. The First Community TAA addressed the situation where the parent filed tax returns and received tax refunds as the sole authorized tax filing agent. The First Community TAA did not address what would happen if the subsidiary filed the tax returns and received the tax refunds. Here, it was uncontested that the FDIC-Receiver, as receiver for the subsidiary, filed the returns and received the Tax Refunds. The Holding Company neither made the refund requests nor received the Tax Refunds.

MOTION FOR LEAVE TO APPEAL - 6

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4
Case 14-04194-BDL    Doc 83    Filed 11/19/15    Ent. 11/19/15 16:37:44    Pg. 6 of 17

account of an antecedent debt, (3) made while the debtor was insolvent, (4) within 90 days before the filing of the petition, that (5) enables the creditor to receive more than it would have received in a chapter 7 case if the transfer had not been made. 11 U.S.C. § 547(b), (g). The Trustee's inability to produce a valid, binding tax sharing agreement and admission that the Holding Company could not have claimed an ownership interest in the Tax Refunds preclude a finding that the IRS's payment of the Tax Refunds to the FDIC-Receiver constituted a transfer of an interest of the Debtor in property. And the Trustee provided no evidence whatsoever that there was any antecedent debt. In fact, the only evidence on the point was to the contrary—that there was no antecedent debt.

To prevail on his turnover claim, the Trustee was required to establish that "(1) the property is in the possession, custody, or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to section 363 or that the debtor could exempt under section 522, and (4) that the property is not of inconsequential value or benefit to the estate." 11 U.S.C., § 542(a); *Shapiro v. Henson*, 739 F.3d 1198, 1200 (9th Cir. 2014). The Trustee had the burden of proving his claims for turnover. *Search Market Direct, Inc. v. Jubber (In re Paige)*, 443 B.R. 878, 896-97 (D. Utah 2011), *aff'd in part and rev'd in part*, 685 F.3d 1160 (10th Cir. 2012). The Trustee conceded that he had no factual basis to assert that the Holding Company owned the Tax Refunds. Because the Holding Company never owned the Tax Refunds, those Tax Refunds never became property of the estate, and the Trustee was not entitled to turnover.

### D. The Reasons Why Leave to Appeal Should Be Granted

This Court should grant an interlocutory appeal for several reasons. First, the Ninth Circuit's binding *Bob Richards* decision states that in the absence of an agreement to the contrary, a consolidated group parent has no equitable interest in refunds generated by its subsidiary. It is undisputed that the only agreement offered by the Trustee for the Holding Company is not controlling, and the Trustee was unable to produce any other agreement to rebut

MOTION FOR LEAVE TO APPEAL - 7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4

Case 14-04194-BDL    Doc 83    Filed 11/19/15    Ent. 11/19/15 16:37:44    Pg. 7 of 17

the FDIC's claim in its motion for summary judgment that no such agreement exists. In the absence of any evidence to the contrary, the bankruptcy court was bound to apply the *Bob Richards* rule and grant summary judgment in favor of the FDIC-Receiver. Its failure to do so was an error of law,[8] and the correction of this error on appeal would materially advance the termination of the litigation.

Second, at the hearing on the motions for summary judgment, the Trustee conceded that the Holding Company did not claim and had no basis to claim an ownership interest in the Bank's tax refunds. The filing of bankruptcy does not enhance a debtor's property rights. If the Holding Company could not claim ownership of the Tax Refunds, neither could the Trustee. In light of the Trustee's admission, it was plain legal error for the Bankruptcy Court to deny the FDIC-Receiver's motion for summary judgment.

Third, where the Trustee failed to provide any evidence at all to prove a required element of the preference claim (the existence of an antecedent debt), the Court erred as a matter of law in failing to grant summary judgment to the FDIC-Receiver on the preference claim.

Because the "the appellate issue[s] [are] legal in nature and [their] resolution either 1) could dispose of the case or proceeding and obviate the need for factfinding; or 2) would materially aid the bankruptcy court in reaching its disposition on remand," *Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing Serv., Inc.),* 113 F.3d 1091, 1098 (9th Cir. 1997), appellate review is appropriate.[9]

---

[8] The Trustee's arguments concerning the potential effect of an unknown tax sharing agreement (despite his inability to produce one after the close of extensive discovery), and the Bankruptcy Court's seeming adoption of them, are a material misapplication of *Bob Richards*. *Bob Richards* establishes a presumption that places on the parent company claiming ownership of a tax refund pursuant to a tax sharing agreement—here, the Trustee—the burden of proving that an agreement exists granting the parent the rights to the tax refund. The Trustee did not meet that burden of proof.

[9] Neither party believes that it makes sense to proceed with a trial on the merits where the Bankruptcy Court's jurisdiction is questionable, given the expense and risks of potentially having to try the case twice. As Trustee's counsel stated at the hearing on the cross-motions for summary judgment:

MOTION FOR LEAVE TO APPEAL - 8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4

E. **A Copy of the Interlocutory Order**

As required by Fed. R. Bankr. P. 8005(b)(1)(E), a copy of the Order on Motions for Summary Judgment is attached.

DATED this 19th day of November, 2015.

MILLER NASH GRAHAM & DUNN LLP

*/s/ Teresa H. Pearson*
Teresa H. Pearson, P.C., WSB No. 25889

B. Amon James
Nicholas Katsonis
Federal Deposit Insurance Corporation
3501 Fairfax Drive, Room D-7060
Arlington, Virginia 22226-3500

Attorneys for Defendant
Federal Deposit Insurance Corporation, in its capacity as Receiver of Venture Bank

---

MR. JACKSON: . . . So my position is, and I come to it very reluctantly, if summary judgment is not granted, I think we need to determine the issue of whether the reference must be withdrawn or not before we go any further. And I don't like the idea of another, you know, tussle of motion practice, but I think that absent that we're heading for, you know, this –

THE COURT: You want to have one trial.

MR. JACKSON: -- very confusion.

THE COURT: You don't want to have two. And the way to have one trial is to have a district court determine whether this issue is one that can be decided finally by the bankruptcy court?

MR. JACKSON: Right. Exactly.

Transcript, 10/8/2015, p. 68.

MOTION FOR LEAVE TO APPEAL - 9

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70062854.4

Case 14-04194-BDL    Doc 83    Filed 11/19/15    Ent. 11/19/15 16:37:44    Pg. 9 of 17

Below is the Order of the Court.



_____
**Brian D. Lynch**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br>VENTURE FINANCIAL GROUP, INC.,<br>　　　　　　　　　Debtor. | Case No. 13-46392-BDL |
| MARK D. WALDRON,<br>　　　　　　　　　Plaintiff,<br>　　v.<br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br>　　　　　　　　　Defendant. | Adversary No. 14-04194-BDL<br><br>**ORDER ON MOTIONS<br>FOR SUMMARY JUDGMENT** |

The chapter 7 trustee ("Trustee") for the bankruptcy estate of Venture Financial Group, Inc. ("VFG") filed a complaint against the Federal Deposit Insurance Corporation in its capacity as receiver of Venture Bank ("FDIC-R") asserting four claims, each stemming from the estate's alleged ownership of certain tax refunds. FDIC-R contends that the tax refunds at issue were owned by Venture Bank, a wholly-owned subsidiary of VFG. The parties each filed motions for summary judgment [ECF no. 51, 61], as well as responses [ECF no. 68, 70] and

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 1

replies [ECF no. 74, 77]. A hearing on the parties' motions for summary judgment was held on October 8, 2015. Trustee appeared through his counsel, Dillon Jackson, and FDIC-R appeared through its counsel, Teresa Pearson. At the hearing, Trustee abandoned his claim seeking declaratory judgment, leaving three unresolved claims concerning ownership of the tax refunds. After hearing oral arguments from both parties, the Court took the matter under advisement.

### A. Evidentiary Issues

Along with the parties' motions for summary judgment, responses, and replies, the Court considered supporting declarations submitted by FDIC-R from Justin Martin [ECF no. 52] and by Trustee from Dillon Jackson, Kenneth Parsons, James Arneson, and Sandra Sager [ECF no. 62-65, 71], as well as various exhibits and deposition excerpts submitted by FDIC-R [ECF no. 53-55]. FDIC-R filed a series of objections to Trustee's supporting declarations [ECF no. 69, 75], and Trustee responded [ECF no. 78]. In an oral ruling at the October 8, 2015 hearing, the Court sustained FDIC-R's objections to certain portions of those declarations but otherwise overruled FDIC-R's objections and considered the declarations as part of the record.

### B. Summary Judgment

Federal Rule of Civil Procedure 56(a), made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must

be drawn in the nonmovant's favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

### 1. The Tax Refunds

Venture Bank and Venture Wealth Management, Inc. are both wholly-owned subsidiaries of VFG (collectively, the "Consolidated Group"). In the past, VFG, as the parent corporation, served as sole agent for the Consolidated Group for tax purposes, pursuant to 26 C.F.R. § 1.1502-77. In 2009, Venture Bank was closed and placed into federal receivership, with FDIC-R appointed as receiver. In 2011, FDIC-R made a request to the Internal Revenue Service (the "IRS") to serve as alternative agent to file tax returns for the Consolidated Group, pursuant to 26 C.F.R. § 301.6402-7, which was approved despite VFG's objection. Between 2011 and 2013, FDIC-R filed amended tax returns as alternative agent for the Consolidated Group, requesting refunds for years 2004 through 2007. VFG filed its voluntary chapter 7 petition on October 10, 2013.

This dispute concerns ownership rights to tax refunds received by FDIC-R, as alternative agent for the Consolidated Group, in the amounts of $6,204,763.10 pre-petition and $2,267,219.26 post-petition (the "Tax Refunds"). As ordered by the Court, the Tax Refunds are currently held in a neutral account pending resolution of this ownership dispute [Case no. 13-46392, ECF no. 98]. The parties agree that the Tax Refunds are solely attributable to loss carrybacks of Venture Bank.

### 2. *Bob Richards*

"In the context of tax refunds attributable to a subsidiary (but held by a parent as a result of a decision to file consolidated tax returns)… 'the parties are free to adjust among themselves the ultimate tax liability.'" *In re Indymac Bancorp, Inc.*, 554 F. App'x 668, 669 (9th

Cir. 2014) (quoting *W. Dealer Mgmt. v. England* (*In re Bob Richards Chrysler–Plymouth Corp.*), 473 F.2d 262, 264 (9th Cir. 1973) ("*Bob Richards*")). Under *Bob Richards*, "where the parties have made no agreement concerning the ultimate disposition of the tax refund, the parent holds the tax refunds in trust for the subsidiary." *Id.* (internal quotations omitted). Therefore, the threshold issue for determining ownership of the Tax Refunds is whether there is an agreement concerning the ultimate disposition of the Tax Refunds, which "may be done through an explicit agreement, or an agreement implied by the parties' past practices." *Id.* (citing *Bob Richards*, 473 F.2d at 264 & n. 4) (internal quotations omitted).

The parties' positions on the threshold issue continue to evolve, but suffice to say there are disputes regarding whether the tax allocation agreement of VFG's predecessor-in-interest is still in effect, whether that agreement was abandoned, whether that agreement was supplanted by a more recent written agreement which cannot be located, whether there was an agreement which may be implied by the parties past practices, and what the terms of the alleged written or implied agreement are. There are genuine issues of material facts which prevent the Court from resolving this issue on summary judgment.

### 3. The Policy Statement and Treasury Regulations

FDIC-R relies on the 1998 Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure (the "Policy Statement") and related Treasury regulations in two ways: first, by asserting that the Policy Statement and Treasury regulations support the conclusion that the Tax Refunds are not property of VFG's bankruptcy estate, and second, by alleging that the parties and their predecessors-in-interest followed procedures mirroring the Policy Statement and Treasury regulations.

The Policy Statement was issued "to provide guidance to banking organizations and savings associations regarding the allocation and payment of taxes among a holding company and its subsidiaries." Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed.Reg. 64757-01 (Nov. 23, 1998).[1] The Policy Statement encourages written tax allocation agreements, and provides suggestions for how those agreements should address certain issues.

One of those suggestions is that "an organization's tax allocation agreement or other corporate policies should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent." *Id*. That suggestion is based on the Policy Statement's guidance that, pursuant to 26 C.F.R. § 1.1502-77(a), "a parent company that receives a tax refund from a taxing authority obtains these funds as agent for the consolidated group on behalf of the group members." *Id*.

26 C.F.R. § 1.1502-77 is a Treasury regulation generally establishing that the parent company serves as the sole "agent" for "all matters relating to the federal income tax liability for the consolidated return year for each member of the group." 26 C.F.R. § 1.1502-77(a)(1). Similarly, 26 C.F.R. § 301.6402-7 is a Treasury regulation outlining procedures for issuing tax refunds when the consolidated group includes an insolvent financial institution, and allowing a fiduciary to be deemed an "agent" under 26 C.F.R. § 1.1502-77 when certain notice requirements are satisfied. 26 C.F.R. § 301.6402-7(c).

The Policy Statement is "non-binding" and legally "irrelevant" to adjudicating the ownership of the Tax Refunds. *In re IndyMac Bancorp, Inc.*, No. 2:08-BK-21752-BB, 2012 WL

---

[1] The agencies consist of The Federal Deposit Insurance Corporation, the Board of Governors of the Federal Reserve System, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision. Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed.Reg. 64757-01.

1037481, at *39 (Bankr. C.D. Cal. Mar. 29, 2012) *report and recommendation adopted sub nom. In re IndyMac Bancorp Inc.*, No. CV 12-02967-RGK, 2012 WL 1951474 (C.D. Cal. May 30, 2012) *aff'd sub nom. In re Indymac Bancorp, Inc.*, 554 F. App'x 668 (9th Cir. 2014); *see also In re Vineyard Nat. Bancorp*, 508 B.R. 437, 446 (Bankr. C.D. Cal. 2014) ("nothing in the [Policy Statement] renders it legally binding or has the force of law"). Therefore, the Court will only consider the Policy Statement to whatever extent it can be shown that it was expressly or impliedly incorporated into a tax allocation agreement. *See, e.g., In re NetBank, Inc.*, 729 F.3d 1344, 1350 (11th Cir. 2013) (agreement included a "clear expression" that "the intent of the parties was to comply with the Policy Statement.") *cert. denied sub nom. Zucker v. F.D.I.C.*, 135 S. Ct. 476, 190 L. Ed. 2d 357 (2014).

Like the Policy Statement, the Treasury regulations "are basically procedural in purpose and were adopted solely for the convenience and protection of the federal government," and none of those regulations can be construed to govern the issue of ownership. *Bob Richards*, 473 F.2d at 265; *see also In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 at *6 ("Tax regulations concerning the payment of refunds to a holding company (or any other entity) are not determinative of the ultimate ownership of such refunds."); *In re Team Financial, Inc.*, No. 09-10925, 2010 WL 1730681, at *7 (Bankr. D. Kan. Apr. 27, 2010) (neither 26 C.F.R. § 1.1502-77 nor 26 C.F.R. § 301.6402-7 determine the ownership of any overpayment or refund.). Moreover, 26 C.F.R. § 301.5402-7 explicitly states that it "determines the party to whom a refund or tentative carryback adjustment will be paid but is not determinative of ownership of any such amount among current or former members of a consolidated group (including the institution)." 26 C.F.R. § 301.5402-7(j). Therefore, the Court

will not give any legal significance to Treasury regulations in determining ownership of the Tax Refunds.

Having determined that the Policy Statement and related Treasury regulations are legally insignificant for determining ownership of the Tax Refunds, the Court also declines to attribute any legal significance to FDIC-R's filing of income tax returns or receiving the Tax Refunds from the IRS as alternative "agent" for the Consolidated Group. "Case law makes clear that this "agent" status is procedural only and without effect on the parties." *In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 at n. 13 (citing *Bob Richards*, 473 F.2d at 265). "Tax regulations concerning the payment of refunds to a holding company (or any other entity) are not determinative of the ultimate ownership of such refunds." *Id*. at *6. *See also In re Vineyard Nat. Bancorp*, 508 B.R. at 446 (it is "irrelevant" which party "received the tax refunds directly from the IRS.").

### 4. 28 U.S.C. § 1823(e)

FDIC-R also argued that any alleged tax allocation agreement would be unenforceable pursuant to 12 U.S.C. § 1823(e), which imposes certain conditions on the enforcement of an "agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance Corporation] in any asset acquired by it" as receiver. 12 U.S.C. § 1823(e)(1).

12 U.S.C. § 1823(e) only applies to "conventional loan" transactions. *In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 at *41. Tax allocation agreements are not the sort of "regular banking transaction" to which 12 U.S.C. § 1823(e) is intended to apply. *Id*. Therefore, 12 U.S.C. § 1823(e) is "legally and factually inapplicable" to the Court's determination of ownership of the Tax Refunds. *Id*.

### C. Conclusion

The Court grants partial summary judgment to Trustee as to certain claims made by FDIC-R, as spelled out in this ruling, but denies both parties' motions for summary judgment as to the central question of whether there is an agreement that determines the ownership of the Tax Refunds, and if so, what the terms of that agreement are. Summary judgment is also granted to FDIC-R on Trustee's declaratory judgment claim which Trustee has abandoned. Pursuant to the scheduling order, the Court will issue a separate order setting a pre-trial conference to discuss trial setting and related issues.

/// END OF ORDER ///